STATE OF MAINE
OXFORD, SS.

RECEIVED AND FILED

MAR 20 2002

Donna L. Howe
CLERK OF COURTS

SUPERIOR COURT
Docket No. CV-00-072

PAUL MURPHY,
                    Plaintiff,

            v.                                    ORDER

GILMAY VALLEE,
                    Defendant.

DONALD L. GARBRECHT
LAW LIBRARY

MAY 10 2002

## PROCEDURAL HISTORY

David Murphy filed suit against Gilmay Vallee on October 19, 2000. In his Complaint, Mr. Murphy alleged that he had significantly increased the value of Ms. Vallee's property through both monetary and labor contributions, and that her retention of the benefit he conferred amounted to unjust enrichment. Ms. Vallee filed a timely answer denying his claim. The case was heard on March 7, 2002 and, at that time, the court heard from the parties, their witnesses, and their attorneys. After reviewing the evidence in light of the controlling case law, the court must conclude that Mr. Murphy has failed to establish that he is entitled to any award. The findings and conclusions issued below are, in part, based upon the court's determination of the credibility of the witnesses presented.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On November 7, 1989, Gilmay Vallee purchased a piece of land on Route 140 in Hartford, Maine for $22,000. At approximately the same time she purchased a 1962 trailer, and had it placed on the land in Hartford. At the time of these purchases, a septic system, dug well, and driveway were already in place, and Ms. Vallee's brother, David Bouthot, soon made substantial improvements to the trailer so that his sister and

her children could reside there comfortably.

In 1992 or 1993, Ms. Vallee began a romantic relationship with Paul Murphy. Mr. Murphy moved into her trailer in 1993 and, during the next two years he gave Ms. Vallee $50.00 per week to offset the increase in grocery, telephone, and utility bills associated with his presence. During that same period, Ms. Vallee's brothers Daniel and David Bouthot built an addition to provide her with more living space.

In late 1994 or early 1995, Ms. Vallee and Mr. Murphy discussed replacing the aging trailer with a newer, larger model. However, those discussions took another path when David Bouthot offered to build a house for them. Ms. Vallee attempted to obtain a construction loan for the project, but was turned down by Mechanics Savings Bank because there was no contractor on the job, and was turned down by the Livermore Falls Trust Company because her income to debt ratio was insufficient. In June 1995, Ms. Vallee and Mr. Murphy went to the Livermore Falls Trust Company together and borrowed $35,000 for six months through a construction loan.

Over the 1995 July 4th weekend, the parties, their friends, and family members began the construction of the house. Nelson Bouthot arranged for the excavation and construction of a reinforced foundation; Daniel and David Bouthot did most of the skilled carpentry work, and the rest of the "crew" did whatever they were told. Throughout the summer and fall of 1995 David Bouthot worked at the site nearly every day. Mr. Murphy, Ms. Vallee, and many others were there during evenings and weekends.

Because of Mr. Bouthot's tremendous generosity, Mr. Murphy, Ms. Vallee, and her children were able to move into a brand new house in November 1995. On

2

December 22, 1995, Ms. Vallee and Mr. Murphy signed a Promissory Note, and agreed to repay $62,650 to the Livermore Falls Trust Company. Approximately $13,000 of that amount was used to pay off Ms. Vallee's previous mortgage; the rest had been spent on the construction of the home. To secure this debt, Ms. Vallee granted a mortgage on her property to the Livermore Falls Trust Company.

From January 1996 until November 1999, Mr. Murphy lived at the house in Hartford and paid $255 per month to Ms. Vallee.[1] Ms. Vallee testified that she had requested that amount because it equaled one-half of her monthly mortgage payments. In addition, Mr. Murphy did pay the real estate taxes one year. Ms. Vallee paid all other household expenses, including three tax bills, four annual insurance premiums, and all groceries and utilities. Between 1996 and 1999, Mr. Murphy was paying over $1500 per month for a tractor and trailer he bought to become an independent trucking operator. Ms. Vallee's property was listed as security for each piece of equipment. Mr. Murphy was also paying off loans for a truck and for a snowmobile; those monthly payments exceeded $500.

In November 1999, Mr. Murphy left Ms. Vallee's home. At that time he took with him the tractor and trailer Mr. Murphy later sold those items. Since November 1999, Mr. Murphy has made no payments to Ms. Vallee. She has continued to pay the promissory note to the Livermore Falls Trust Company. As of the date of the trial, the balance owed was approximately $59,000.

---

[1] At Mr. Murphy's request, Ms. Vallee had handled all of his financial paperwork during their relationship. Although he claimed that he had contributed to all of the household expenses, Mr. Murphy was unable to testify as to the amount of money he contributed.

## DISCUSSION

Although Ms. Vallee has attempted to portray Mr. Murphy's claim as a contractual demand, the evidence does not support a finding that there was ever a contract between the parties. Ms. Vallee was adamant and credible when she explained that they had never discussed transferring her property into joint tenancy. If the parties had intended to do so, such a transfer could have easily been accomplished when either the construction loan or the promissory note were signed. Ms. Vallee's motion for judgment on that basis is denied.

In order to prevail on his claim of unjust enrichment, Mr. Murphy must prove that he conferred a benefit on Ms. Vallee, that she knew of the benefit conferred, and that allowing her to retain the benefit without any payment to him would be inequitable. Mr. Murphy has asserted that he contributed money and labor to the construction of the house, and that these contributions conferred a benefit on Ms. Vallee. However, the extent of Mr. Murphy's work on this project could not be accurately determined from the evidence presented. Even if the court were able to find that he worked a total of 25 hours each week, there was no evidence presented to allow the court to translate those hours. Mr. Murphy acknowledged that the work he did was at the direction of Ms. Vallee's brothers. It was their work that added most of the value to her property. Determining the value of the "benefit" Mr. Murphy's work conferred on Ms. Vallee would have been nearly impossible. His signature on the construction loan and the promissory note did make it possible for her to obtain financing, but that "benefit" was more than compensated when she allowed her property to be used as security for his tractor and trailer.

However, for the purpose of this decision, the court will assume that Mr. Murphy has established the first two elements. The remaining question, then is whether allowing Ms. Vallee to retain the benefit without payment would be equitable.

This house-raising was a community project. Although Mr. Murphy's efforts surpassed those of many others, they were dwarfed by the efforts of Ms. Vallee's brothers. Mr. Murphy was able to live at Ms. Vallee's home, rent-free, both before and during the construction of the house. In support of his claim, Mr. Murphy cited *Siciliani v. Connolly*, 651 A.2d 386 (Me. 1994). However, the facts here render that precedent inapplicable. As discussed above, Ms. Vallee testified, and the court finds, that the parties never intended to place the property in joint tenancy. Although a contemporaneous understanding that compensation will be expected is not an element of unjust enrichment, the court may consider the parties' intentions and understandings in determining whether one's retention of a benefit would be inequitable.

Although Mr. Murphy may have believed he was assisting in the construction of a house he would one day own, that belief, without more, is insufficient to support a determination that Ms. Vallee's retention of the house was inequitable. Ms. Vallee received and retained a benefit from Mr. Murphy's work, just as she received and retained a benefit from her brothers, neighbors and friends. None of the others made a claim; they expected that their only remuneration would be gratitude and the sense of accomplishment one receives from helping others. Given the ephemeral nature of unmarried domestic relationships, Mr. Murphy should have realized that those same things might be his only reward.

5

## ORDER

For the reasons stated above, and based upon the evidence submitted at trial, the court grants judgment to the defendant on the plaintiff's complaint.

The Clerk is directed to incorporate this Order in the docket by reference, in accordance with M.R.Civ.P. 79(a).

DATED: March 15, 2002

_____
Ellen A. Gorman
Superior Court Justice

Date Filed __10-19-00__     __OXFORD__     Docket No. __CV-00-72__
<br>County

Action __OTHER CIVIL__

PAUL MURPHY         vs.     GILMAY VALLEE

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JUSTIN LEARY ESQ<br>SHARON LEARY    & DETROY<br>P O BOX 3130<br>AUBURN ME 04212 | ANTHONY K FERGUSON ESQ<br>P O BOX 889<br>LEWISTON ME 04243-0889 |

| Date of Entry | |
|---|---|
| 10-19-00 | Complaint Summary Sheet filed; $120 filing fee received. |
| 10-19-00 | Complaint filed. |
| 10-19-00 | Summons served on Def on Rt 140 in Buckfield on 10-14-00 in hand, filed. |
| 10-19-00 | Case File Notice mailed to Justin Leary Esq. |
| 11-16-00 | Answer filed on 10-19-00 and entered. |
| 11-16-00 | Scheduling Order filed. Disc. deadline is July 16, 2001.<br>Dated: 11-16-00 Gorman J. Copy to J. Leary, Esq., and A. Ferguson, Esq. |
| 12-11-00 | N.O.D.S. filed. Notice to Take Deposition of Plaintiff Paul Murphy served on Justin Leary, Esq. on 12-07-00 by A. Ferguston, Esq. |
| 01-03-01 | N.O.D.S. filed. Notice to Take Oral Deposition of Gilmay Vallee served on A. Ferguson, Esq., on 12-19-00 by J. Leary, Esq. |
| 01-29-01 | N.O.D.S. filed. First Request for Production of Documents Propounded to Plaintiff P. Murphy served on J. Leary, Esq. by A. Ferguson Esq. on 01-25-01 |
| 02-16-01 | N.O.D.S. filed. Plaintiff's Request for Production of Documents served on Anthony K. Ferguson, Esq., on 02-15-01 by Justin w. Leary, Esq. |
| 03-08-01 | N.O.D.S. filed. Plaintiff's Response to Defendant's Request for Production of Documents served on Anthony K. Ferguson, Esq. on 03-07-01 by Justin W. Leary, Esq. |
| 03-23-01 | N.O.D.S. filed. Defendant's Response to Plaintiff's Request for Production of Documents served on Justin W. Leary, Esq., of Sharon, Leary & DeTroy of Auburn, ME on 03-22-01 by Anthony Ferguson, Esq. |

| Date of Entry | Murphy v. Vallee          Docket No. CV-00-72 |
|---|---|
| 03-29-01 | N.O.D.S. filed. Defendant's First Supplemental Response to Plaintiff's Request for Production of Documents were served on Justin W. Leary, Esq., on 03-28-01 by Anthony K. Ferguson Esq. |
| 04-11-01 | Unopposed Motion to Extend Defendant's Expert Witness Deadline and proposed Order filed by Anthony K. Ferguson, Esq. |
| 04-12-01 | ORDER filed. Def.'s Motion to Extend Expert Witness Deadline is granted without objection. The designation of Def.'s expert witnesses shall be filed not later than June 1, 2001. All other deadlines of the Court's Scheduling Order remain in effect. Dated: April 12, 2001, Delahanty, J.

Copy of Order mailed to J. Leary, Esq. and A. Ferguson, Esq. |
| 04-13-01 | N.O.D.S. filed. Plaintiff's Response to Defendant's Request for Production of Documents served on Anthony K. Ferguson, Esq. on 04-10-01 by Justin W. Leary, Esq. |
| 05-02-01 | N.O.D.S. filed. Designation of Expert Witness served on Anthony K. Ferguston, Esq. by Justin W. Leary, Esq. on 05-01-01. |
| 06-04-01 | N.O.D.S. filed. Designation of Defendant's Expert Witness served on Justin W. Leary, Esq. by Anthony K. Ferguson, Esq. on 06-01-01. |
| 08-21-01 | Plaintiff's Witness and Exhibit List filed. |
| 09-07-01 | Defendant's Witness and Exhibit list filed. |
| 10-22-01 | Trial Management Conference filed. Pursuant to Rule 79(a),M.R.Civ.P., the clerk is directed to make the following entry in the civil docket. Conference order filed. 10-22-01 Delahanty, J. Copy given to J. Leary,Esq. and A. Ferguson, Esq. |
| 11-05-01 | Plaintiff's Trial Memorandum filed. |
| 03-07-02 | Civil non-jury trial held.

Gorman, J.,  T. Drouin, C.R.,
Justin Leary, Esq. for the Plaintiff and Anthony Ferguson, Esq. for def.

9:10 a.m.  Plaintiff's witnesses:
1. Daniel Murphy
2. David Boutot
3. Paul Murphy

Plaintiff rests.

Def. Orally moves for Judgment as a Matter of Law.
Order: Motion denied by Justice Gorman.

Defendant's witnesses:
1. Gilmay Vallee, 2. Andrew Sturdivant, 3. Nelson Boutot,
4. Enoil 'Rick' Boutot   5. Daniel Boutot

1:37 pm Def. rests. |

| Date of Entry | |
|---|---|
| Docket No. CV 00-72 | |
| 03-07-02 | trial continued... |
| | Plaintiff's rebuttal witness: Paul Murphy |
| | Plaintiff Closing. |
| | Defendant Closing. |
| | Case taken under advisement. Judge Gorman has the file. |
| | Plaintiff's Exhibits offered, admitted and filed.<br>1. Appraisal report<br>2. Promissory Note |
| | Defendant's Exhibits<br>1. - 9. offered, admitted, and filed.<br>14, 15, 15a, 15b, 17-26. and # 29. Photographs |
| 03-20-02 | ORDER filed.<br>For the reasons stated above, and based upon the evidence submitted at trial, the court grants judgment to the def. on the plaintiff's complaint.<br>Dated: 3-15-02, Gorman, J. |
| | Copy of Order mailed to Justin Leary, Esq. and Anthony Ferguson, Esq. |
| 03-28-02 | Bill of Costs filed by Defendant. |
| 04-05-02 | Response to Bill Of Costs filed by Plaintiff. |
| 04-08-02 | Copy of docket sheet, Def.'s Bill of Costs and Plff.'s response mailed to Justice Gorman. |
| 04-09-02 | Affidavit of Counsel in Support of Bill of Costs filed.<br>Copy mailed to Justice Gorman. |
| 04-12-02 | Order filed: Costs in the Amount of $705.42 approved. S/Gorman, J.<br>Dated: 04-08-02.<br>Copy to Justin Leary Esq., and Anthony Ferguson, Esq. |